UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAPAY VALLEY COALITION, an unincorporated association,<br><br>Plaintiff,<br><br>v.<br><br>SALLY JEWELL, in her official capacity as Secretary of the Interior; KEVIN K. WASHBURN, in his official capacity as the Assistant Secretary of Indian Affairs of the United States Department of Interior; AMY DEUTSCHKE, in her official capacity as Pacific Regional Director, Bureau of Indian Affairs; BUREAU OF INDIAN AFFAIRS; and DOES 1 through 100, inclusive,<br><br>Defendants,<br><br>and<br><br>YOCHA DEHE WINTUN NATION,<br><br>Intervenor. | No. 2:15-cv-02574-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Capay Valley Coalition ("Plaintiff" or "CVC"), a mutual benefit, non-profit corporation whose members consists of residents, citizens, and farmers in the Capay Valley, seek declaratory and injunctive relief against Defendants Sally Jewell, in her official capacity as Secretary of the Interior; Kevin K. Washburn, in his official capacity as

the Assistant Secretary of Indian Affairs ("AS-IA") of the United States Department of Interior; Amy Deutschke, in her official capacity as Pacific Regional Director; and the Bureau of Indian Affairs ("BIA") (collectively "Federal Defendants"). Plaintiff challenges the BIA's decision to convert approximately 853 acres of land into trust for the Yocha Dehe Wintun Nation ("Tribe" or "Intervenor Defendant"). The Tribe was granted leave to intervene on April 18, 2016. ECF No. 11. CVC moved for summary judgment on July 22, 2016. Pl.'s MSJ, ECF No. 17. The Federal Defendants cross-moved for summary judgment on September 7, 2016, Fed. Defs.' MSJ, ECF No. 19, and the Tribe filed a separate motion for summary judgment also on September 7, 2016, Tribe's MSJ, ECF No. 20. For the reasons described below, Plaintiff's motion is DENIED, Federal Defendants' motion is GRANTED, and the Tribe's motion is GRANTED.[1] The decision of the BIA is affirmed.

## BACKGROUND[2]

In June 2011, the Tribe applied with the BIA to have approximately 853 acres of land in Yolo County held by the Tribe in fee simple transferred into trust. The subject property consists of 15 parcels of land located in the Capay Valley. Currently, there are five single family homes on the property; four of them are unoccupied, and the fifth houses the Tribe's Cultural Department. The property is surrounded by agricultural land and is located adjacent to land already held in trust for the Tribe.

According to the application, the Tribe intends to use 99 acres to develop 25 residential housing units, a school, cultural and educational facilities, and a wastewater treatment system. The Tribe has stated it has no plans of changing the current agricultural status of the remaining 753.9 acres.

---

[1] Because oral argument would not have been of material assistance in rendering a decision, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[2] The following facts are derived from Plaintiff's Complaint, the parties' briefing, and the administrative record; they are undisputed.

2

On July 29, 2013, the BIA issued a notice to state and local governments seeking comments on the Tribe's application, specifically seeking information on the potential impact of acquisition on property taxes, special assessments, governmental services, and whether the intended use is consistent with zoning. CVC and Yolo County submitted comments, each opposing the application based among other things on the Tribe's purported need for the land under 25 CFR § 151.10(b). The Pacific Regional Director of the BIA issued a Notice of Decision ("NOD") in April 2014, approving the Tribe's application. CVC timely appealed, and the AS-IA affirmed the decision to acquire the approximately 853 acres in trust for the Tribe. The present suit followed.

**PROCEDURAL FRAMEWORK**

The Indian Reorganization Act ("IRA"), enacted in 1935, authorizes the Secretary of the Interior, in her discretion, to acquire land and hold it in trust "for the purpose of providing land for Indians." 25 U.S.C. § 465. "When the Secretary takes land into trust on behalf of a tribe pursuant to the IRA, several important consequences follow." Connecticut ex rel. Blumenthal v. U.S. Dep't of Interior, 228 F.3d 82, 85 (2d Cir. 2000). "Land held in trust is generally not subject to (1) state or local taxation; (2) local zoning and regulatory requirements; or, (3) state criminal and civil jurisdiction, unless the tribe consents to such jurisdiction." Id. at 85-86 (citations omitted) (citing 25 U.S.C. § 465; 25 C.F.R. § 1.4(a); 25 U.S.C. §§ 1321(a), 1322(a)).

Title 25, Code Federal Regulations, section 151.10 ("Section 151.10") sets forth the criteria the Secretary shall consider in evaluating requests for the acquisition of land in trust status when the land is located within or contiguous to an Indian reservation, and the acquisition is not mandated. Relevant to the present Complaint and motion (ECF Nos. 1 and 17), CVC challenges the BIA's decision, arguing that the NOD failed to sufficiently consider (1) the Tribe's need for the land to be placed in trust under Section 151.10(b); (2) the potential jurisdictional issues associated with transferring the

land to trust under Section 151.10(f); and (3) any land use conflicts that may arise due to the transfer under Section 151.10(f).

## STANDARD

The Administrative Procedures Act ("APA") standards of review govern a court's review of an agency's actions under the IRA. 5 U.S.C. § 701 et seq.; see Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of the Navy, 898 F.2d 1410, 1414 (9th Cir. 1990) (judicial review of final agency actions is governed by the APA). Under the APA, the court shall set aside any agency decision that it determines is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard is "highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric., 499 F.3d 1108, 1115 (9th Cir. 2007) (quoting Indep. Acceptance Co. v. California, 204 F.3d 1247, 1251 (9th Cir. 2000)).

In an action brought under the APA, the court ultimately must determine whether the agency decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment. This inquiry must be 'searching and careful,' but 'the ultimate standard of review is a narrow one.'" Marsh v. Or. Nat. Res. Council, 490 U.S. 360, 378 (1989); citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971). In making this inquiry, courts review whether the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise. Motor Vehicle Manufacturers Association v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983); Great Basin

///

Mine Watch v. Hankins, 456 F.3d 955, 962 (9th Cir. 2006); Natural Resources Defense Council v. Department of the Interior, 113 F.3d 1121, 1124 (9th Cir. 1997).

Summary judgment is an appropriate procedure in reviewing agency decisions under the dictates of the APA. See, e.g., Nw. Motorcycle Ass'n v. U.S. Dept. of Agric., 18 F.3d 1468, 1471–72 (9th Cir. 1994). Under Federal Rule of Civil Procedure 56, summary judgment may be had "where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute." Id. at 1472. In cases involving agency action, however, the court's task "is not to resolve contested facts questions which may exist in the underlying administrative record," but rather to determine whether the agency decision was arbitrary and capricious as defined by the APA. Gilbert Equip. Co. v. Higgins, 709 F. Supp. 1071, 1077 (S.D. Ala. 1989); aff'd, 894 F.2d 412 (11th Cir. 1990); see also Occidental Eng'g Co. v. Immigration & Naturalization Serv., 753 F.2d 766, 769 (9th Cir. 1985).

The APA precludes the trial court reviewing an agency action from considering any evidence outside of the administrative record available to the agency at the time of the challenged decision. See 5 U.S.C. § 706(2)(E); Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985); Havasupai Tribe v. Robertson, 943 F.2d 32, 34 (9th Cir. 1991). Although the arbitrary and capricious standard "is narrow and presumes the agency action is valid, . . . it does not shield agency action from a thorough, probing, in-depth review.'" Northern Spotted Owl v. Hodel, 716 F. Supp. 479, 481-82 (W.D. Wash. 1988) (citations omitted). The court cannot, however, substitute its judgment for that of the agency or merely determine that it would have decided an issue differently. See Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 377 (1989); Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).

///
///
///
///
///

**ANALYSIS**

Plaintiff bears the burden of proving that the BIA's analysis of these factors was arbitrary and capricious. South Dakota v. U.S. Dep't of Interior, 423 F.3d 790, 800 (8th Cir. 2005). To meet this burden, Plaintiff must "[p]resent evidence that the [BIA] did not consider a particular factor; it may not simply point to the end result and argue generally that it is incorrect." Id. The Court addresses each of Plaintiff's three arguments identified above in turn.

### A. The NOD Sufficiently Considers Tribal Need Under Section 151.10(b)[3]

Plaintiff first contends that the BIA's NOD fails to demonstrate the necessity for 853 acres to be placed into trust to achieve the Tribe's goals, as required under Section 151.10(b). More specifically, Plaintiff argues that because the Tribe's proposed project for development of the newly acquired land requires only 99 acres, the remaining 754 acres do not need to be transferred into trust, and the Tribe can continue its agricultural operations on those and other lands it owns in fee simple. Plaintiff notes that the NOD fails to explain how the Tribe's agricultural goals would be hindered by 754 acres remaining in fee. In response to the Tribe's purported need to exercise its sovereign jurisdiction over the land, Plaintiff contends the Tribe fails to support that need with specific uses that would promote cultural values and customs.[4] Plaintiff also contends the BIA was obligated to consider the Tribe's entire trust land to date, its

---

[3] Plaintiff cites to Section 151.10(c) for the proposition that one of the criteria to be considered is the Tribe's need for the land. The Court assumes the citation to subsection (c) is a typo, as subsection (b) addresses need for the land, while subsection (c) addresses what purposes the land will be used for. Plaintiff also cites Section 151.10(a)(3) for the position that the Tribe must establish a need for the land. However, there is no Section 151.10(a)(3). To the extent Plaintiff intended to cite to Section 151.3(a)(3), that subsection has no bearing on the analysis. Section 151.3(a) sets out three scenarios in which land may be transferred into trust, and it is undisputed that the Tribe's application meets those delineated in subsections (a)(1) and (a)(2), rendering analysis of (a)(3) unnecessary under the facts presented. Nonetheless, the Secretary also determined that acquisition of the land was "necessary to facilitate tribal self-determination, economic development, or Indian housing," as required under subsection (a)(3).

[4] To the extent Plaintiff takes issue with the Tribe's more specific justifications—such as the creation of a "buffer zone"—such specific justifications are not required, and as explained below the BIA was therefore not obligated to precisely evaluate each stated need. See Shawano County v. Acting Midwest Reg'l Dir., 53 IBIA 62, 78 (2011).

6

recently deferred plans for additional development, and the possibility of transferring less than 853 acres to trust.

At bottom, Plaintiff contends that the Tribe's purported need for 754 of the 853 acres is not supported by the record, and further looks to the Tribe's previous development of trust lands in the Capay Valley as an indication that the Tribe will likely develop these 853 acres in the same way. Because the BIA simply parrots the Tribe's statement of need without support in the record, Plaintiff argues, the BIA's grant of the land in trust was in error.

The Court finds, however, that the BIA—as affirmed by the AS-IA—properly considered the Tribe's need for the property in question. As provided in the AS-IA's Decision, "need simply is not ascertained by an assessment of how much land is needed for proposed development. The [Tribe] may acquire land in trust to expand its land base without being required to develop the land." AR004618. Indeed, nothing requires the BIA to consider why the Tribe needs the land in trust as opposed to in fee. See City of Yreka v. Salazar, No. 2:10-cv-1734-WBS-EFB, 2011 WL 2433660, at *9 (E.D. Cal. June 14, 2011) (citing South Dakota, 423 F.3d at 801). Moreover, nothing requires the BIA to individually evaluate each and every acre in the Tribe's application, or to consider the possibility of transferring less than the total requested acreage. See Shawano County v. Acting Midwest Reg'l Dir., 53 IBIA 62, 78 (2011) (rejecting plaintiff's argument that the tribe may only need 25% of the requested land in trust). Rather, Section 151.10(b) only requires the BIA to consider "the Tribe's needs and conclude generally that IRA purposes were served." South Dakota, 423 F.3d at 801.

Here, the BIA determined that the Tribe needed the land for expansion and growth, including housing for Tribal members and a wastewater treatment and recycling plant. AR004365-66. The BIA additionally found acquisition of the land to be "essential" to the Tribe's "ongoing efforts to restore its ancestral land base," and was "necessary in order for the Tribe to exercise its sovereign jurisdiction over the land." Id. And specifically with regard to the land that would remain in agricultural use, the BIA found

the Tribe has an interest in "maintaining the rural character of the Nation and surrounding lands." Id. The AS-IA additionally noted that the Tribe "cannot fully exercise tribal self-governance over the agricultural land unless and until it is in trust for the Nation." AR004618. These portions of the record, among others, reflect the BIA's proper consideration of Tribal need per Section 151.10(b).

### B. The NOD Sufficiently Considers Potential Jurisdictional Issues Under Section 151.10(f)

Plaintiff next argues that the BIA failed to consider potential jurisdictional issues as required under Section 151.10(f). Specifically, even though the Tribe has provided that it does not anticipate any jurisdictional issues, Plaintiff contends the BIA did not consider that the transfer of 853 acres would allow the Tribe to extensively develop land that is currently agricultural land. Such development would have a large impact on land use, transportation, water resources, habitat, and special status species, to which the local government would have no recourse. Plaintiff asserts that "[s]imply because the Tribe does not anticipate jurisdictional conflicts does not mean that there is no potential for jurisdictional conflicts." Pl.'s Mot., ECF No. 17, at 14. Plaintiff contends that the County raised these concerns and sought to restrict commercial development of the agricultural land in question, but was ignored.[5] Plaintiff further claims that to the extent such concerns were addressed, the NOD simply points to the money and services the Tribe provides to the County and Capay Valley, and that these funds and services do not alleviate the potential jurisdictional conflicts.

The Court finds the BIA properly considered potential jurisdictional issues under Part 151.10(f). Indeed, the NOD provides that since the State of California possesses criminal/prohibitory jurisdiction over Indian lands pursuant to 18 U.S.C. § 1162 and 28 U.S.C. § 1360, the State's jurisdiction would remain unchanged by the acceptance of

---

[5] The BIA did in fact consider the County's concern of future commercial development, and acknowledged in the NOD that such a restriction on the Tribe's future use of the land would not be authorized.

8

the land in trust. AR004368. Moreover, because the Tribe has stated its intent to continue the agricultural use of the 754 acres, the fact that Yolo County would lose regulatory jurisdiction over the lands was found not to be a concern. Id. The BIA additionally found that the Tribe shared Yolo County's interest in protecting the rural character of the property. Id. In as much as Plaintiff's argument hinges on the BIA's failure to consider that the Tribe might someday develop the agricultural acreage, the BIA is not required to speculate as to future use of the land beyond what the Tribe avers. See City of Yreka, 2011 WL 2433660, at *9 (E.D. Cal. June 14, 2011) ("[T]he Secretary need not consider 'speculati[ve]' future uses of land." (second alteration in original)). Finally, as the County's concerns largely mirror Plaintiff's, the BIA's consideration of potential jurisdictional issues also properly addressed those concerns.[6]

### C. The NOD Sufficiently Considers Possible Land Use Conflicts Under Part 151.10(f)

Closely related to its jurisdictional argument, Plaintiff argues that transfer of the 853 acres into trust could lead to development of that land, which would in turn cause a tremendous cumulative impact and growth-inducing impact.[7] Plaintiff contends that—while the Tribe has asserted that future development is not foreseeable or planned—the BIA did not consider that the Tribe has historically been an active developer in the Capay Valley. According to Plaintiff, "[t]he Regional Director's analysis and decision should have considered this cycle of growth-inducing impacts by looking beyond the Tribe's proposed development project to reasonably foreseeable developments based on a thorough evaluation of what the Tribe has considered for development in the recent past." Pl.'s Mot. at 17. Moreover, according to Plaintiff, the BIA did not respond to the County's concerns regarding land use in the NOD.

///

As provided above, however, the BIA is not required to speculate as to future use of

---

[6] It is questionable whether CVC has standing to raise the County's arguments for them. Assuming it does, the Court nevertheless finds CVC's arguments unavailing.

[7] To the extent Plaintiff challenges the Environmental Assessment ("EA") as insufficient under NEPA, that argument was not raised in the present matter, see Pl.'s Mot. at 5 n. 1, and is thus waived.

the land beyond what the Tribe claims, and the Tribe's history of developing other trust land is therefore not relevant to the BIA's evaluation of the Tribe's trust application for this land. See City of Yreka, 2011 WL 2433660, at *9 (E.D. Cal. June 14, 2011). And for the same reasons again, the BIA properly responded to the County's concerns.

### D. The BIA Engaged in a Sufficient Independent Evaluation

With respect to all three arguments above, Plaintiff contends the NOD simply parrots the language of the Tribe's application, thereby indicating that the BIA failed to engage in an independent evaluation of the necessary factors. But nothing prevents the BIA from using language derived from the Tribe's application, or from any other document in the record, so long as it sufficiently considers the enumerated factors discussed above. And nothing in the administrative record indicates that the BIA did not in fact conduct an independent review simply because it used language from the Tribe's application. Because the BIA reached a reasonable conclusion based on its stated review and consideration of relevant information, the Court must defer to its decision.

### E. The Tribe Provided the BIA with All Relevant Information

Lastly, and related to the arguments above, Plaintiff contends that the Tribe failed to provide the BIA with all relevant information and consequently, the BIA's decision was based on only partial information, insufficient for informed decision making. Specifically, Plaintiff asserts the Tribe failed to provide a complete accounting of its existing trust land and the use of that existing land, and failed to disclose "its recently considered development expansion plans on existing trust lands." Pl.'s Mot. at 19. First, it is unclear to the Court what significance this information might play in the BIA's determination because, as discussed above, the Tribe need not show that it was landless or otherwise out of space in order to show its need for the trust acquisition. Similarly, and also as discussed above, the BIA is not required to perform an acre by acre analysis of the Tribe's request, nor is the BIA required to speculate about possible land uses based on the Tribe's development of other lands. Lastly, in justifying its need for the present acquisition, the Tribe did in fact disclose that its present trust land was

fully developed. The Court thus finds no basis to overturn the BIA's informed decision to convert the requested 853 acres into trust for the Tribe.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion (ECF No. 17) is DENIED, Federal Defendants' motion (ECF No. 19) is GRANTED, and the Tribe's motion (ECF No. 20) is GRANTED. The decision of the BIA, as affirmed by the AS-IA, is upheld. The Clerk of Court is directed to enter judgment in favor of Defendants and Intervenor Defendant, and to close this case.

IT IS SO ORDERED.

Dated: September 14, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE